# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CHARLES BAKER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **5:15-cv-0289-AKK** |
| **TRAVELERS INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Charles Baker filed this action against Travelers Insurance Company in the Circuit Court of Morgan County, Alabama, alleging claims for breach of contract and bad faith. Doc. 1-2 at 2–5. Travelers timely removed the action to this court and now moves for summary judgment on all of Baker's claims, arguing that Soquetta Griffin, the individual who obtained the homeowners insurance policy, made misrepresentations on her insurance application and during the post-loss investigation that void the policy. The motion is fully briefed,[1] docs. 20-1; 31; 32; 45; and 46, and

---

[1] After reviewing the parties initial briefs and the case law, the court invited the parties to file supplemental briefs "on the post-loss misrepresentations aspect of Travelers' motion." Doc. 42. In particular, the court asked the parties to address "whether Soquetta Griffin's statements about the ownership and use of the insured property constitute an actual intent to deceive as to a material issue under Alabama law." *Id.* Baker's motion for leave to file his after the deadline, doc. 46, is **GRANTED**, and, consequently, both parties availed themselves of the opportunity to

1

ripe for adjudication. For the reasons stated below, in particular the multiple misrepresentations Griffin made during the post-loss investigation, and which evidence an actual intent to deceive, the motion is due to be granted.

### I. **SUMMARY JUDGMENT STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56©, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if

---

supplement their briefing. The court notes, however, that Baker's supplemental brief focused primarily on the misrepresentations in the application. While the court agrees with Baker that Travelers is not entitled to summary judgment based on the misrepresentations in the application, *see infra* at Sec. III.A, Baker's additional briefing on that issue does not help the court with the post-loss issue for which it requested supplemental briefing.

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II. FACTUAL BACKGROUND[2]

On April 27, 2011, Griffin purchased property located at 1031 Bedford Drive S.W., in Decatur, Alabama for $39,000.00. Approximately five months thereafter, Griffin executed a quit claim deed transferring ownership of the property to Baker, in connection with their agreement to form a partnership to operate a group home at the property. Around the same time she transferred ownership to Baker, Griffin "got into it" with her mother and, as a result, moved into the property. Doc. 29-4 at 138–139. Prior to the incident with her mother, Griffin had no intent to live in the house, *id.*, and instead "wanted to do [a group home] because . . . it's easy money,"

---

[2]The facts are taken primarily from paragraphs 1– 6, and 9–26 of Defendant's Statement of Material Undisputed Facts, doc. 20-1 at 1–7, which Baker does not contest, *see* doc. 31 at 4–5. As such, the court will only provide record citations for the portions of the factual summary that Baker challenges.

doc. 20-2 at 124.

Three months after she transferred ownership to Baker, on December 12, 2011, Griffin reviewed and signed a completed application with Travelers for insurance for the property. Relevant here, the application stated that no business was conducted on premises, failed to disclose the intent to open a group home, and failed to list Baker as the owner of the property. Also, although the application asked whether Griffin had previously filed for bankruptcy, Griffin left this portion of the application blank and did not check either the "yes" or "no" box. Based on the information Griffin provided in her application, Travelers issued a policy with dwelling limits of $113,000 and personal property limits of $79,100 to Griffin. Eight days later, at Griffin's request, Travelers added Baker as an insured on the policy.

Just two weeks after obtaining the policy, specifically, sometime between 11:00 p.m. on New Year's Eve and 8:00 a.m. on New Year's Day, someone allegedly broke into the property, stole various items primarily consisting of electronics, and attempted to set the house on fire. The next day, the house suffered fire damage in a second incident. Following the January 2, 2012 loss, Griffin notified Travelers and an investigation of the claim ensued. The investigation revealed multiple discrepancies that are the basis for Travelers' contention that it is entitled to void the policy. For example, Travelers learned during Griffin's examination under oath that

Griffin filed for bankruptcy fourteen months prior to her application for insurance. Also, when Travelers initially interviewed her, Griffin did not disclose Baker's involvement in the property, and, instead, represented that she owned the property. Griffin repeated this position when Travelers obtained a recorded statement from her on January 25, 2012, stating again that Baker had no ownership interest in the home and adding that she added Baker to the policy because she believed the policy required a second named insured. Griffin finally admitted that Baker had an ownership interest in the property during a second recorded statement that same day. However, even then, Griffin described Baker only as a partial owner, and when confronted about the discrepancy from her earlier statements that Baker had no ownership interest in the house, Griffin responded "that [Baker's ownership interest] was nobody['s] business." On February 8, 2012, when Travelers confronted Griffin with a copy of the quit claim deed during a third recorded statement, Griffin finally admitted that she was not the legal owner of the property. During this interview, Griffin admitted that she knew she was being untruthful when she made the earlier misrepresentations.[3]

---

[3]Specifically, on May 3, 2012, Griffin submitted to an examination under oath wherein she admitted as follows about her earlier interviews:
>Q. Were you asked who the owner of the property was?
>A. Yes.
>Q. And you said yourself?
>A. Yes.

During the investigation, Griffin also made misstatements about the intent to operate a business at the property. For example, during the second recorded statement, Griffin never mentioned that she and Baker had started a joint venture to operate a group home at the property. Griffin finally disclosed that she and Baker intended to operate the home as a group home during the third recorded statement she provided on February 8, 2012.

Based on Griffin's misrepresentations in the application and in the post-loss investigation, Travelers denied the claim Baker submitted for the loss from the theft and fires. Baker filed this lawsuit as a result, alleging claims for breach of contract and bad faith. Doc. 1-2 at 2–5.

### III. <u>ANALYSIS</u>

In a nutshell, Travelers asserts that it is due summary judgment because Griffin made misrepresentations or concealed facts in her application that were either fraudulent, material to Travelers acceptance of the risk or hazard assumed, or such that Travelers would not have agreed to provide coverage for the property. More specifically, Travelers claims that if Griffin had informed it in the application of the

---

        Q. And you knew that was not true?
        A. Yes.
        Q. So, you knew you were telling something that wasn't true?
        A. Yes. Legally, yeah.
Doc. 20-2 at 246.

intent to open a group home, it would not have issued the policy. Doc. 20-6 at 2. Also, Travelers claims that if Griffin had disclosed in the application that Baker was the legal owner of the property, it would have underwritten the policy for eligibility using the risk characteristics for Baker to determine the risks eligibility. *Id.* Based on these misrepresentations, Travelers contends that the policy is void under Section 27-14-7 of the Alabama Code.[4]  Doc. 20-1 at 9–10, 14.  Alternatively, Travelers asserts that the policy is void because Griffin made post-loss misrepresentations with actual intent to deceive as to matters material to the policy. *Id.* at 14–18. The court addresses each contention below.

---

[4]Ala. Code § 27-14-7 (1975). "Application for policy – Representations and misrepresentations, etc." states:

(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7.

7

**A.     Travelers is not entitled to void the policies based on misrepresentations or fraud**

Travelers is correct that under Alabama law, material misrepresentations or suppressions in insurance applications may constitute fraud that is sufficient to void the resulting policy. Ala. Code §§ 6-5-100 to 102;[5] 12-14-7(a)(1). Indeed, Griffin's applications included language indicating that "intentionally conceal[ing] or misrepresent[ing] any material fact" or "engag[ing] in fraudulent conduct" would void the policy. Doc. 20-3 at 27. Nonetheless, as outlined below, factual issues remain that preclude the court from finding that Travelers is entitled to void the policy based on the misrepresentations in the application.

---

[5]Alabama outlines claims for legal fraud as follows:

> § 6–5–100 Fraud—right of action generally.
> Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.
>
> § 6–5–101 Fraud—misrepresentation of material facts.
> Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
>
> § 6–5–102 Suppression of material facts.
> Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

Ala. Code §§ 6–5–100-102.

### 1. *Fraud based on material misrepresentation*

To prove fraud based on misrepresentation, Travelers must show the existence of a misrepresentation of a material fact, reliance, and that it sustained damages as a proximate result of the misrepresentation. *Sherrin v. Nw. Nat. Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993) (citing *Earnest v. Pritchett–Moore,* 401 So. 2d 752, 754 (Ala. 1981)); *AmerUs Life Ins. Co. v. Smith,* 5 So. 3d 1200, 1207 (Ala. 2008). A "material fact" is "a fact of such a nature as to induce action on the part of the complaining party." *Graham v. First Union Nat. Bank of Georgia*, 18 F. Supp. 2d 1310, 1317 (M.D. Ala. 1998) (citing *Bank of Red Bay v. King,* 482 So. 2d 274 (Ala. 1985). "Further, the misrepresentation need not be the sole inducement. It is sufficient if it materially contributes and is of such a character that the [complaining] party would not have consummated the contract had he known the falsity of the statement." *Id.* (citation omitted).

In support of its claim, Travelers contends (1) that Griffin misrepresented the owner of the property and the intent to use it a group home; (2) that these misrepresentations were material because Travelers would not have issued the policy or would have used a different risk assessment if it had known of these facts; (3) that it clearly relied on the information in determining whether to issue the policy; and (4) that it sustained damages as a result of issuing the policy. *See* docs. 20-1 at 8–9,

13–14; 20-6 at 1–2.  Based on the record, it is readily apparent that the application contains multiple misrepresentations. Nonetheless,  summary judgment is improper here for several reasons.  First,  the materiality of a misrepresentation is generally a jury question.  *See, e.g., Travelers Mut. Fire Ins. Co. v. Pabon*, 903 So. 2d 759, 766 (Ala. 2004) (citations omitted); *Bennett v. Mutual of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir. 1992).  Second, Travelers has relied primarily on the testimony of its Director of Underwriting Operations to establish materiality.  *See* docs. 20-1 at 14; 20-6 at 1–2.  However, "under Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would not have issued the policy as written, is not necessarily dispositive." *Bennett*,  976 F.2d at 661 (citing *State Farm Fire and Cas. Co. v. Oliver*, 658 F. Supp. 1546, 1553 (N.D. Ala. 1987) ("[T]he insurance company cannot be allowed automatically to avoid coverage simply because its own employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact.  If this were the law, insurance companies would be sorely tempted to defend, as State Farm has done here, almost every claim of loss."), *aff'd*, 854 F.2d 416 (11th Cir. 1988).

  Travelers is correct that some misrepresentations, whether made intentionally or innocently, increase the risk of loss as a matter of law and are therefore material

to the issuance of the policy. *See, e.g.*, *Alfa Life Ins. Co. v. Lewis,* 910 So. 2d 757, 762 (Ala. 2005); *Clark v. Alabama Farm Bureau Mut. Cas. Ins. Co.,* 465 So. 2d 1135, 1140 (Ala. Civ. App. 1984). However, the limited cases that have found materiality as a matter of law are distinguishable from this case. In fact, Travelers does not cite to a case that granted summary judgment based on misrepresentations that are similar to those here. *See* docs. 20-1; 32. Therefore, based on the case law and the record before this court, this court cannot conclude as a matter of law that Griffin made material misrepresentations in her application to warrant summary judgment under § 24-14-7. Consequently, as it relates to the alleged fraudulent misrepresentations of material facts, Travelers failed to carry its burden.[6]

   2.   *Rescission based on § 27-17-7(a)(3)*

Travelers argues also that it is entitled to void the policy under § 27-17-7(a)(3) because Griffin's misrepresentations factored into its decision to issue the policy. *See* doc. 20-6 at 2. To establish a defense under § 27-14-7(a)(3), an insurer "need only have presented evidence that the [applicant] made the misrepresentation and that

---

[6]To the extent that Travelers is also claiming that Griffin fraudulently suppressed material facts, the claim also fails. To succeed on a fraudulent suppression claim, Travelers must prove: (1) a duty on the part of Griffin to disclose facts; (2) concealment or non-disclosure of material facts; (3) Griffin's knowledge of the facts and their materiality; (4) reliance; and (5) resulting damages. *Sherrin*, 2 F.3d at 378 (citing *Wolff v. Allstate Life Ins. Co.,* 985 F.2d 1524 (11th Cir. 1993) and *Hardy v. Blue Cross and Blue Shield of Ala.,* 585 So. 2d 29, 32 (Ala. 1991)). For the same reasons, a factual question remains as to whether the information Griffin suppressed in the application was material and whether Griffin knew of its materiality.

[the insurer] would not have issued the . . . policy had it known the actual facts." *Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1543 (11th Cir. 1994); *see also First Fin. Ins. Co. v. Tillery,* 626 So. 2d 1252, 1256 (Ala. 1993) (stating that an insurer has the right to expect applicants for policies to tell the truth and finding that Alabama has written this public policy into law in § 27–14–7). The insurer does not have to show an intent to deceive; rather, it can raise the defense even if the misrepresentation was unintentional and innocently made. *Pabon*, 903 So. 2d at 766 (citation omitted). Also, reliance on § 27-14-7(a)(3) does not hinge on the adequacy or existence of the insurer's own investigation. To the contrary, that "the insurer could make its own investigation also does not lessen its right to rely on the representations in the application." *Id.* at 767 (citation omitted).

The key question with regard to the availability of § 27-14-7(a)(3) as a defense is the good faith of the insurer in refusing to issue the policy. *Henson v. Celtic Life Ins. Co.,* 621 So. 2d 1268, 1275 (Ala. 1993). Moreover, an insurer relying on § 27-14-7(a)(3) has the burden of demonstrating that its underwriting guidelines in dealing with similar misrepresentations are universally applied. *Sharp Realty & Mgmt., LLC v. Capitol Specialty Ins. Corp.*, CV-10-AR-3180-S, 2012 WL 2049817 (N.D. Ala. May 31, 2012) (citing *Mega Life and Health Ins. Co. v. Pienozek,* 516 F.3d 985, 989 (11th Cir. 2008)). In that regard, Travelers offers the affidavit of Richard Maestri,

who attests that "[h]ad Travelers been informed in the application for insurance of the intent to open a group home, the policy . . . would not have been issued," and that "had Travelers been informed . . . that Charles Baker was the legal owner of the property, the policy would have been underwritten for eligibility using the risk characteristics for Charles Baker . . . to determine the risks eligibility." Doc. 20-6 at 2. While Travelers' assertions are logically sound, Travelers failed to provide evidence of a universal application of its underwriting policy or similar situations in which it denied coverage.  Therefore, the court cannot conclude as a matter of law that Travelers in good faith would not have issued the policy.  As the Eleventh Circuit found in a case interpreting § 27-14-7(a)(3), "under Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would not have issued the policy as written, is not necessarily dispositive." *Bennett*, 976 F.2d at 661.  In light of the failure to present evidence regarding the universal application of Travelers' underwriting policies, the alternate ground for relief under § 27-14-(a)(3) also fails.

**B.     Post-Loss Misrepresentations**

Finally, Travelers contends also that the policy is void because Griffin made multiple misrepresentations during the post-loss investigation. Indeed, the record is replete with such misrepresentations.  Among other things, Griffin initially failed to

13

disclose that she and Baker intended to use the property as a group home or that Baker actually owned the property. Instead, she first described Baker as someone she listed on the policy solely because she believed she needed to identify a second person on the policy, and then subsequently described him as a joint owner. Finally, during the third recorded statement she provided about a month after the first, Griffin disclosed that Baker owned the insured property, but only after Travelers confronted her with the quit claim deed she issued to Baker months before she took out the policy. Doc. 20-5 at 2–3.

To prevail on this alternate contention for summary judgment, Travelers must show that Griffin made the post-loss misrepresentations with an intent to deceive. *See* Ala. Code. § 27-14-28 (1975) ("No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to the insured's rights under the policy."). Travelers contends that it can make this showing, arguing that "[t]he intent to deceive is evident from Ms. Griffin's recorded statements and her examination under oath wherein she stated that she knew her statements about her ownership of the property were false."[7] Doc. 32 at 9. Based on the record before the court, the court agrees.

---

[7] *See* n.3 *supra* for the relevant portion of Griffin's testimony.

In response to Travelers' contention, Baker counters that Griffin had no intent to deceive because Griffin purportedly believed she still owned the property notwithstanding the deed she executed: "Recognizably, Ms. Griffin is not the most savvy as related to legal distinctions, but no intent to deceive existed. This [is] evident in Ms. Griffin's statement regarding ownership, [doc #20 Defendant Ex. 4 pg. 116, line 1] she states, '[Baker] may be the sole owner but it is still my house.'"[8] Doc. 31 at 18. There are at two obvious problems with this contention. First, the cited page 116 of Griffin's May 3, 2012 Examination Under Oath contains no such statement, and there are no similar statements in any of the bordering pages. The court confesses that it did not read the entire 294 pages of the examination to ascertain whether it could perhaps find the quoted language or any passage remotely similar to it because "judges are not like pigs, hunting for truffles buried in briefs" or, in this case, in a voluminous evidentiary record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (internal quotation marks omitted). *See also United States v. Adkinson,* 135 F.3d 1363, 1378–1380 (11th Cir. 1998)(holding that it is not the court's duty to sift through the record for evidence that supports a party's contentions); *Dickson v.*

---

[8]Baker made similar points in his supplemental brief – "[s]imply stated, an incorrect statement made by Ms. Griffin as to ownership does not, alone, establish intent to deceive." Doc. 46 at 6. The difference here is that Griffin admitted that she knew she was lying when she made the statements in question.

*Amoco Performance Prod., Inc.*, 845 F. Supp. 1565, 1570 (N.D. Ga. 1994)("It should be the party's responsibility to direct the court's attention to each portion of the record which supports each of the party's distinct arguments."). Second, even if Baker is correct that Griffin believed she still technically owned the property, this does not explain why she failed to disclose that she deeded the property to Baker prior to obtaining the policy or that she believed the issuance of the deed did not divest her ownership right. Her admission that she knew she was lying when she withheld this information evidences an intent to deceive. After all, when Griffin submitted the claim, she certainly wanted Travelers to approve it, and, as such, had the incentive to only relay information that she believed would facilitate a finding in her favor and to omit unfavorable information.[9] Indeed, when Travelers pressed for an explanation as to why she withheld such a relevant fact, the only answer Griffin provided was that Baker's ownership of the property was "nobody['s] business." Doc. 20-5 at 3. With all due respect to Griffin, Travelers was not a "nobody;" it was the

---

[9]Baker contends in his supplemental brief "that there are [no] facts to support *any* design or mental action that points to a particular end goal. What is the 'end goal', if deemed incorrect in statement, as to any deception." *See* doc. 46 at 3 (emphasis by Baker); *see also id.* at 6 ("Even adopting the view that Ms Griffin's statements as to the ownership of the subject property were not entirely proper, one still has failed to show any intention that would benefit either Ms. Griffin or Mr. Baker."). These contentions are unavailing, in part, because the desire to get her claim approved may, in fact, qualify as the "end goal." Moreover, Travelers only needs to show that Griffin made a post-loss misrepresentation with an actual intent to deceive. *See* Ala. Code. § 27-14-28. Determining whether Griffin had an 'end goal' – whatever she may perceive the term to mean – is not necessary for the analysis on this issue.

16

carrier Griffin and Baker asked to pay for the loss and it was entitled to the requested information as part of its investigation of the claim. Moreover, this response by Griffin undermines Baker's contention that Griffin's failure to disclose Baker's ownership interest was an innocent lapse. To the contrary, it reeks of an actual intent to deceive by withholding information Griffin believed Travelers had no right to know despite Travelers repeated questions about this issue.

In short, because the policy states unequivocally that it provides no coverage to the insureds when one of them makes any false statements after a loss, *see* doc. 20-3 at 27, and because Griffin admitted that she knew she was lying when she made the statements, Baker is precluded from receiving coverage under the policy, and his claims must fail.

## IV. **CONCLUSION**

Based on the evidence before this court, Travelers' motion for summary judgment is due to be granted.

**DONE** the 13th day of September, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE